## In re SUSQUEHANNA SILK MILLS.
### No. 59955.

District Court, S. D. New York.
March 4, 1935.

Breed, Abbott & Morgan, of New York City, for trustees.

Putney, Twombley & Hall, of New York City (Lemuel Skidmore, of New York City, of counsel), for creditor.

PATTERSON, District Judge.

Receivers in equity of the Susquehanna Silk Mills were appointed on July 18, 1932. At that time Mitsui & Co., Limited, had five contracts for the sale of raw silk to the Susquehanna. On these contracts there were 1,360 bales of silk undelivered, and deliveries were called for in July, August, September, and October. In four of these contracts the agreed price was considerably higher than the current market price on July 18, 1932, for such future deliveries; in the fifth the agreed price was the same as the current market price. A few days later the receivers informed Mitsui that they would be obliged to renounce the four contracts calling for higher prices, but that they nevertheless wanted to take the silk in order to continue manufacture. They proposed that Mitsui make deliveries of the quantities specified, and that payment be made by the receivers at the market prices current when deliveries were made. Mitsui agreed to the proposal, and submitted to the receivers a form of agreement. This form recited the receivership and the unwillingness of the receivers to adopt the contracts; it provided that the receivers canceled and renounced the five contracts, that Mitsui would sell and deliver the silk at dates corresponding in general to the original dates of delivery, to be paid for in cash at market prices current on delivery, and that Mitsui's damages by reason of cancellation should be the difference between the contract prices and such market prices at the time of deliveries. The receivers objected to this form of agreement and proposed two changes. The first was that it be recited that the receivers canceled only the four contracts with high prices, and that Mitsui refused to perform the fifth. The second was that the making of the contract should be without prejudice to Mitsui's right to claim damages from the receivers' failure to perform the four contracts and to the receivers' right to claim damages from Mitsui's failure to perform the fifth. Mitsui acquiesced in both of these changes, and a written agreement incorporating them was executed. As signed, the agreement provided: (1) That the receivers canceled the four contracts, Mitsui refused to perform the fifth; (2) that Mitsui would sell the 1,360 undelivered bales and make deliveries at times specified in the agreement, the prices to be the market prices current at the time of deliveries; (3) that the making of the agreement should be without prejudice to Mitsui's right to claim damages for the receivers' failure to perform the four contracts canceled by them, and likewise without prejudice to the receivers' right to claim damages for Mitsui's failure to perform the fifth contract.

This agreement was carried out. Mitsui made the deliveries; the receivers paid for the silk in cash at the market. The market on silk had gone up between the date of receivership and the dates of such deliveries, and it is this rise in the market that has engendered the present controversy.

Mitsui filed a claim in the receivership. One item in the claim was for $102,000, representing the difference between the agreed price in the four contracts and the market price on the date of receivership. This item the receivers objected to as excessive. Their position is that Mitsui's loss on the four contracts must be measured by the difference between the contract price and the market price at date of delivery; that this difference was only $35,000; that in addition the receivers have a claim against Mitsui for $11,000 on the fifth contract, because the market price on date of delivery of the goods under that contract exceeded the contract price by that figure.

The Susquehanna Silk Mills later filed a petition for reorganization under section 77B of the Bankruptcy Act (11 USCA § 207). The equity receivers were appointed trustees. The present motion is by the trustees to have the Mitsui claim reduced.

**1.** The rule in equity receiverships is that where the receiver renounces an executory contract of the insolvent to purchase commodities customarily sold for future delivery, the measure of damages provable by the seller is the difference between the contract price and the price at which he could have sold the commodity at the time the receiver was appointed, for delivery as required by the contract. The leading case is Samuels v. E. F. Drew & Co., 292 F. 734 (C. C. A. 2).

**■** The receivers concede that such is the general rule. They urge, however, that the present case is exceptional, in that the seller and receivers made a new contract whereby the seller's damages were reduced. The argument lacks merit. In the first place, the new contract contained the express provision that the Mitsui claim for the insolvent's refusal to perform the four original contracts should not be prejudiced. It is noteworthy that Mitsui proposed that the damages be fixed at the very measure now contended for by the receivers, the difference between contract and market at the time of delivery, and that the receivers rejected the proposal as likely to involve the insolvent estate in further loss. In the second place,

it is plain that the new contract did not in reality operate to mitigate the seller's damages. The rise in the market subsequent to receivership was an advantage to the seller, just as it would have been without a new agreement with the receivers.

**■** 2. It is equally clear that the receivers have no claim because of the seller's refusal to perform the fifth contract. The seller had the right, under the rules of the Silk Association incorporated in the contract, to decline to fulfill the contract because of the insolvent's default on the other contracts. Moreover, the insolvent suffered no damages on cancellation of this contract. The contract price and market price at the time were practically the same.

It follows that the Mitsui claim was filed for the proper amount. The motion to reduce it will be denied.